SIMKINS v. COLUMBIA & GREENVILLE RAILROAD COMPANY.

1. A horse found upon a railroad track in this State is not a trespasser, not even under the terms of the stock law, where the horse is in its owner's inclosed pasture, through which the railroad has only a right of way.
2. Negligence is a relative term, and its existence depends upon the requirements of the occasion.
3. In the running of a railroad train, the employes must regard the safety of the passengers and the property of the company, as well as dangers to cattle and persons on the track, and the question of negligence is influenced by these considerations; but it cannot be said that a railroad company is liable only for gross negligence in the killing of a horse on its track by a train of cars, or for wanton negligence or willful misconduct.
4. The Circuit judge committed no error in refusing to charge the jury " that if it appear that a horse killed or injured by a train was first discovered or was first discoverable on the track at such a short distance from the place where he was killed or injured that the train could not have been stopped

in time to prevent running over or against the horse, it was not necessary that the persons running the train should have seen the horse, or, having seen him, that they should have attempted to stop the train."

5. Horses on a railroad track were killed by a passing train, which was thereby thrown from the track and its engine injured. *Held,* that the injury to the engine was no proper counter-claim in action for damages brought by the owner of the horses against the company.

6. There being contradictory evidence, the judge properly refused to direct a verdict.

7. Where a request to charge asserts a general proposition of law, which, so far as applicable to the cause at issue, had already been charged, there is no error in refusing the request.

Before PRESSLEY, J., Newberry, February, 1882.

This was an action by Eldred C. Simkins against the Columbia and Greenville Railroad Company, commenced April 7th, 1881, to recover $500 damages for the killing of two horses belonging to plaintiff by a train of cars of the defendant company, on or about March 1st, 1881. The defendant denied liability and asserted as a counter-claim injuries done to the engine and cars of the company by the presence of these horses on the track. To this counter-claim there was no reply.

The accident occurred at a trestle, towards which the horses had run on the track from one hundred and twenty-five to two hundred and fifty yards, as estimated by witnesses from the tracks of the horses. All this was within the pasture of plaintiff, through which defendant had a right of way, and the horses were killed about midnight. The employes of the company, in charge of the train, did not know that these horses were on the track until after the engine had been thrown off by the killing of the horses. As to the speed of the train, the darkness of the night, and the burning of a headlight on the engine, the evidence was conflicting.

The defendant presented several requests to charge. Those which were refused are correctly quoted in the exceptions, and the opinion states the reasons given by the Circuit judge for his refusal. He did charge the jury as follows:

"That under the laws of this State a railroad company is not bound to protect its track by fences or other inclosure from the

incursions of horses, cattle, or other animals. That a railroad company is not liable for the killing of a horse upon the track by its train, if such killing is accidental. That a railroad company is not liable for injuries caused by the mere fact that a train was of such length, or was running at such speed at night, that it could not be stopped by the engineer and brakeman short of one hundred or two hundred or even three hundred yards, inasmuch as such running of a train is not negligence or misconduct. That in the absence of proof of gross negligence or willful misconduct on the part of the railroad company itself, the damages for the killing or injuring of horses on the track can in no event be vindictive, but merely compensatory for the actual loss proven to have been sustained by the same."

And he further charged the jury that the fence or stock laws of this State applicable to Newberry county and other counties at the time these horses were injured changed the rule of law formerly prevailing here, so as to do away with the presumption of negligence on the part of the railroad, derived from the mere fact of killing or injuring stock, and so as to put upon the owner of the stock killed or injured the burthen of proving that such killing or injuring was the result of negligence on the part of the railroad or its employes; but that the plaintiff having introduced testimony on the point of negligence, if the jury should conclude from the testimony in the case that there was negligence on the part of the railroad or its employes, they should find for the plaintiff, the owner of the stock.

The jury rendered a verdict for the plaintiff for $328.

The defendant appealed upon the following exceptions, together with those copied into the opinion :

6. "Because his Honor refused the request of the defendant to charge the jury 'That a railroad company is not liable for the killing or injuring of a horse upon the track by its train, unless such killing or injuring is the result of either wanton negligence or willful misconduct of the employes running the train.'

7. "Because his Honor refused the request of the defendant to charge the jury 'That since the enactment of the stock or fence laws of this State, the killing or injuring of horses by a railroad train, on its track, in Newberry county, does not put the

burthen of proof upon the railroad company, that such killing or injuring was accidental or inevitable, but that in such case it is necessary, in order to make the railroad company liable, that there be proof of wanton negligence or willful misconduct on the part of the employe or employes running the train.'

8. "Because his Honor refused the request of the defendant to charge the jury 'That if it appear that a horse killed or injured by a train was first discovered, or was first discoverable, on the track at such a short distance from the place where he was killed or injured, that the train could not have been stopped in time to prevent running over or against the horse, it was not necessary that the persons running the train should have seen the horse, or having seen him, that they should have attempted to stop the train.'

11. "Because his Honor refused the request of the defendant to charge the jury, 'That where a party seeks to recover damages for injury to his person or property, resulting from the negligence of another, he must show that his own conduct has been free from blame; and it must not appear that he has contributed to the cause of injury on account of which he complains.' "

*Messrs. Suber & Caldwell,* for appellant.

*Messrs. Moorman & Simkins,* contra.

November 27th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The respondent seeks to recover in this action, the value of two horses, killed on the track of defendant's railroad, by a train of cars passing over them. Unlike the case of Jones against this defendant, just decided by this court, [see next case *ante,*] the respondent assumed the duty of proving negligence affirmatively by other testimony than the mere killing, and he did not rely upon the presumption arising from the fact of killing as in *Danner's Case.* The defendant also introduced evidence upon the subject of negligence, and the case was stoutly fought, on both sides, as to that question. The defendant submitted various legal propositions,

some fourteen in all, to the Circuit judge, with requests to charge them. The judge declined eleven of these requests, which now constitute the grounds of appeal.

The first four, as is admitted, involved the same principle and hinge upon the same point, and they were discussed before us, on both sides, under the same head. They rest upon the general proposition, that a horse found upon a railroad track in this State is a trespasser, and that all questions as to the liability of a railroad company in the killing of such horse, must be adjudicated under the light of the fact that he is a trespasser. No doubt the counsel presenting these requests intended them to apply to Newberry county, the place of trial, as legal propositions arising under the operation of the stock law, and to such other counties in which the stock law had become the law. They intended to claim that in such counties, since the enactment of the stock law, stock were not at liberty to roam at large as formerly, and if in such cases they were found outside the premises of their owner, it was illegal, and a trespass, and that in such cases the law, as to injuries done them, should be applied under the influence of that fact.

The propositions, however, as presented to the judge, were general in their terms, no reference being made to Newberry county or to the stock law. The judge made a written indorsement on these requests, as follows :   " They relate to the general law of the State, and not to the fence law of this (Newberry) county.   As a general rule of law in this State, said propositions are contrary to the decisions of this State." It does not appear that any effort was made to correct this misunderstanding of the judge, or to inform him that the requests were founded upon the stock laws of force in Newberry county. On the contrary, the charge as thus indorsed seems to have been submitted to. This court has no power to consider propositions not made below, or to review refusals to charge in the absence of requests to charge.   Errors of commission are of course before us, when brought up by proper exceptions, but errors of omission must be founded upon a previous request to the judge, in addition to the exceptions necessary to bring them under our review.

Looking at the requests as understood by the judge, based

upon .the generality of the terms in which they were couched, there can be no doubt that his ruling was correct.   But had he understood the request to have reference to Newberry county, and based upon the stock law of force in that county, according to the view which we take of the question it would not have been error to refuse the request, as we do not think the stock law has any application to the case.   The injury complained of was sustained at a point on the track where it passed through an inclosure of the plaintiff, used by him as a pasture for his cattle. The only statute of force at the time the disaster occurred was the act of December 14th, 1878.   16 *Stat.* 689.   The language of which is, "That in the counties of Abbeville, Union, Newberry and Laurens, it shall not be lawful for the owner or manager of any horse   *   *   *   or neat cattle of any description to permit the said animals or any of them to run at large beyond the limits of their own land."

· It is conceded in this case that the railroad company did not own the land upon which its track rested at the point where the damage was done, but was only entitled to a right of way, an easement, over the said land.   The act above cited, further provides that " wherever any of the said stock be found upon the lands of another person than the owner, the owner of such stock shall be liable for all damages sustained."   It will be observed that the prohibition is against permitting stock to run at large beyond the limits of the owners of land, and the penalty is a liability for damages, if one's stock is found upon the lands of another.   In this case the animals of the plaintiff were not beyond the limits of his land.   They were not upon the lands of the defendant.   The defendant had only an easement, an incorporeal hereditament, which is something different from land.   The plaintiff still retained the ownership of the land, and might lawfully use it in any way not inconsistent with the easement of the defendant.

There was, therefore, nothing unlawful in the act of the plaintiff in permitting his stock to roam at large in his inclosed pasture upon his own land, through which the defendant only had the right of way, and it was not a trespass on his part for his animals to stray upon the track of the defendant's railroad.

We have not been able to discover in any of the various acts in relation to the stock law, any indication of an intention to embrace within their provisions the various railroad tracks in this State, and it seems to us clear that the terms used in the act referred to, according to their proper construction, cannot be extended so as to embrace the track of a railroad in which the company has a mere easement, and does not own the land over which the track passes. In our opinion, therefore, all of the grounds of appeal based upon the stock law must be overruled.

Fifth exception. "Because his Honor refused the request, that a railroad company is not liable for killing or injuring a horse upon the track of its train unless such killing or injuring is the result of gross negligence on the part of the employes running the train, or at least on the part of the engineer." The judge allowed this except the word "gross." We think the weight of the authorities sustains the judge's ruling. The subject of negligence has been much discussed, and various definitions have been given of it, and much confusion has arisen in reference thereto. Sometimes it has been held to be a question of fact and left almost entirely to the good sense of the jury. At other times it has been regarded as a question of law, and sometimes it has become a mixed question of law and fact. It is not necessary for us in this case to go into this question and explore the mass of cases in the different States and courts where this subject has been considered and adjudged. The exception itself submits it as a question of fact, and the only objection is that the Circuit judge did not require as a legal proposition that the jury should be limited to such negligence as might be termed gross.

Negligence, as we understand it, is the absence of care, and in its essence, in all of its forms, it implies wrong and fault in the party committing it. There may be different degrees of care. There may be a most assiduous, minute and scrupulous attention governing one's conduct, or there may be that sort of attention which characterizes the conduct of ordinary men, or, still further, that which belongs to the reckless and indifferent. And there may be the absence of all care, substituted by a wanton, willful act, intended to do injury. The absence of these degrees of care may characterize the negligence which results. In the

first class the negligence might be designated as slight; in the second, ordinary, and in the third, gross, if epithets are necessary. Now there are but few cases where that minute and scrupulous attention, referred to above in the first class, is required by the law, and consequently but few cases where slight negligence can be made the foundation of an action for damages. All that the law requires, as a general rule, is that sort of care which prudent men, influenced by personal interest, ordinarily bestow on their business and conduct, and it is the absence of this kind of care which in most cases gives rise to actions at law. This of course includes the third class, where there is not even the care of the reckless and indifferent.

It should be observed here, however, that negligence is a relative term, and its existence in a given case depends upon the requirements of the occasion. I mean to say, that an act may be negligent under one state of facts when the same act under a different state of facts might be entirely free from negligence. For instance, to drive a wild and dangerous horse, and of unusual speed, along a crowded street with hundreds of persons and vehicles on the way, would be a negligent act, for the injurious consequences of which, if any, a party could, no doubt, be held responsible; but to drive the same horse at the same speed along an unoccupied street, or along some secluded road in one's own enclosure, seldom or never traveled by others, might be free from every feature of negligence. So, too, in those counties in the State where the stock law has not become the law, and where cattle are at liberty to roam at large upon railroad tracks and elsewhere at will, for a train of cars to dash forward, without the precaution which should be observed in such cases, might be negligent, whereas the same train, going at the same speed, and without the same precaution, in the counties where the stock law has been adopted, and where the railroad employes had no thought that cattle would be found on the track, would not be a negligent act.

So, at last, the kind of negligence for which a party may be made responsible depends on the degree of care which may be required in the special case. If the care of the most prudent and scrupulous is required, then slight negligence may be actionable. If ordinary care is only required, then the absence of this or

ordinary negligence would sustain an action. If the case demands only the care of the indifferent and reckless, (and we know of no such case,) then gross negligence would be necessary. Negligence in all of its forms, as we have said, implies wrong. It carries with it the idea of fault—a failure to do what is required to be done. And an injury resulting from this failure must be redressed, whether it be a slight, ordinary or gross failure. That is to say, in cases where either of these degrees is actionable under the principles laid down above, then an injury resulting from it is entitled to be redressed.

It is true, it has been held in words in some of the States where the rule of the common law as to cattle prevailed, to wit, where the owner was bound to keep them on his own land, that railroad companies could only be made answerable for an injury to them wantonly perpetrated, or, as is said in some of the cases, where the act causing the injury was reckless and willful. This seems to have been held in Massachusetts, New York, Rhode Island, and in some other of the States. But in Vermont, and in some other States, the doctrine prevails that the company is liable for injuries to cattle upon its track if they could have been avoided by its servants in the exercise of ordinary care. *Pierce Railr. L.*, *p.* 322–326, where the different cases are collected.

These principles, although seemingly in direct conflict, may yet be somewhat harmonized by remembering, as urged above, that negligence is relative, and its character depends upon the care required in a given case; and, therefore, what would be negligence, gross or otherwise, in one case, might have no feature of negligence in another. In the running of a railroad train, the employes must look to the safety of the passengers and of the property of the company, as well as to dangers to cattle and persons on the track, and the question of negligence must be determined by these considerations and others; but after letting these have their legitimate influence subordinating the danger of cattle to these higher interests, we cannot agree to the doctrine, that only gross negligence, to wit, the absence of that care which the reckless and indifferent would give, could alone make the road responsible. We do not see that the fact that stock are required to be fenced in, and are not expected to be found on

the track, should release the company from the bestowal of such care as would be reasonable in such a case. It certainly ought not to license the company to any conduct short of gross, willful and vicious, or, as is said in some of the cases, willful negligence. We think, therefore, that the Circuit judge was warranted in striking out the word "gross" in the exception.

Of course, we do not undertake here to determine what would be slight, ordinary or gross negligence in these railroad cases. All that we determine is, that it is not necessary to show gross negligence, and that liability may attach below this. We think the law requires these companies, even in counties where the stock law prevails, to exercise at least reasonable care, such as ordinarily prudent men would be expected to exercise under the circumstances. Whether this has been exercised in a special case is a question of fact for the jury.

The next two exceptions, the sixth and seventh, in which the judge was requested to charge that nothing short of wanton negligence or willful misconduct could make the defendant responsible, are disposed of by what we have already said.

We do not see that the eighth exception involves any principle of law. If it was a fact that the horse was first discovered or was first discoverable at so short a distance on the track that the train could not have stopped in time, then this might have been urged upon the jury as proof that there was no negligence; but we do not see that the judge was required to charge that there was no negligence as matter of law.

The ninth exception alleges error because his Honor refused to charge as requested: "That a counter-claim for damages resulting from the trespassing of the horses set up in the defendant's answer in an action for damages for the killing or injury of horses by the train of a railway company is proper, and must be allowed to the extent of the damages proved to have actually resulted to the railroad from such trespassing, if it appear that such damage to the company was not the result of blamable conduct on the part of the company or the employes running the train." Under the code (section 171) a counter-claim may be interposed: 1. Where the cause of action of defendant, which he attempts to set up by counter-claim, arises out of the contract

or transaction set forth in the complaint as the foundation of plaintiff's claim, or is connected with the subject of the action. 2. Where the plaintiff's action is on contract, and the defendant's cause of action is also on contract and in existence at the commencement of plaintiff's action. *Lynch's Code, p.* 72.

The plaintiff's action here did not originate in contract, so we need not consider any of the grounds above, except that portion of the first which provides for a counter-claim where the defendant's cause of action arises out of the transaction set forth in the complaint, or is connected with the subject of the action. Did the defendant's cause of action, presented in his counter-claim, arise out of the transaction set forth in the complaint, or was it connected with the subject of plaintiff's action? The foundation of the counter-claim is an alleged trespass by plaintiff's horses, which resulted in injury to defendant's engine. The transaction, if it be a transaction, which is the foundation of plaintiff's action, is an injury done to plaintiff's horses by a train of cars of defendant. These two events were nearly contemporaneous in this instance; but did the first arise out of the latter?

There is certainly no necessary connection between two such events. The one may happen, and frequently does happen, without the other; but even when happening at or near the same time, we do not see how the trespass of the horses, even if it be admitted that they were trespassing, (which must always be in such cases the first event,) can grow out of the injury done to the horses. Let it be assumed that it was a trespass for the horses to be on plaintiff's track, and this gave the defendant a right of action. The horses were upon the track before the train arrived, and a right of action had accrued to defendant before any cause of action arose to plaintiff.

It may be said, however, that the injury for which defendant seeks by his counter-claim to recover damages occurred afterwards. This is true, but did it grow out of the killing of the horses, which is the transaction constituting plaintiff's cause of action, or did it grow out of the fact that these horses were upon the track and threw the engine off? We do not see that defendant's cause of action grew out of the transaction which is the foundation of plaintiff's suit, in the sense of the counter-claim provided

for in the code, or that it has such connection with the subject of plaintiff's action as, under the code, authorizes it to be set up as a counter-claim here. On the contrary, the two causes seem to us to be entirely separate and independent of each other. The foundation of each is a tort. But these torts have no dependence the one upon the other. The alleged tort of the defendant which constitutes the foundation of plaintiff's action is the negligent running of defendant's cars by which his horses were killed; the alleged tort of plaintiff which is the foundation of defendant's counter-claim, was the alleged illegal presence of his horses upon the railroad track by which the train was thrown from the track and the engine injured. The injury to the engine in point of time, it is true, followed in quick succession that of the injury to the horses; but it cannot be said that the illegal presence of the horses on the track, which is the foundation of defendant's counter-claim, arose out of the negligence of defendant in running the cars, which is the foundation of plaintiff's action. Nor was it connected with the subject of plaintiff's action.

In most of the States having the code, similar provisions to ours in reference to counter-claims have been adopted, and in some of the States, the terms "transaction," "arising out of," "subject of action" and "connected therewith," have been much discussed. The decisions are not uniform, and from them it is difficult to arrive at a definite and satisfactory conclusion. In some of the States, especially in New York, the tendency has been to limit and narrow the meaning of these terms. In others, the construction has been more liberal. In the first, the principles of the former doctrine of set-off and recoupment, which applied to actions *ex contractu* entirely, have controlled, more or less; in the latter, it has been held that the terms "transaction" and "subject of the action" mean something more than contracts, and that consequently counter-claims may embrace other causes of action besides those arising in contract.

This whole subject is fully discussed with great ability and perspicuity in Mr. Pomeroy's second edition of his Remedies and Remedial Rights, § 734, *et seq.*, *p.* 772. And at section 790, will be found a discussion of the "cases in which the

demands of both parties are for damages arising from tort," in which he says: "Counter-claims of damages from torts, when attempted to be enforced against causes of action for damages also arising from other torts, have, with few exceptions, been rejected. The courts have been inclined to adopt, or at least to assume as a general principle, that such a cross-demand can never arise from the transaction set forth by the plaintiff as the foundation of his claim." It will be seen, however, that this doctrine has not been universally accepted. And he presents in the foot note an array of cases from which this principle was extracted. Opposed to this doctrine, he also cites a few cases announcing the principle, that under special circumstances a tort may be counterclaimed against a tort. No doubt this is true, where there is an evident connection. Under the former practice, when the law of set-off and recoupment prevailed, it is certain that the cause of action which the defendant attempts to set up here could not have been interposed. Nor do we see, upon our analysis of the counter-claim provision in our code, that it can be done by virtue of the code. Under these circumstances, while the cases in other States are not authority, yet we are disposed to follow on that line in which the most of them seem to have gone; and, therefore, to hold that the Circuit judge was right in refusing this request of the defendant.

Tenth exception. Because his Honor refused the request of defendant to give a binding charge to the jury "to find for the defendant, because of there being in this case no proof, or, at most, a mere scintilla of evidence of negligence on the part of the defendant or its employes." The judge declined this because there was contradictory testimony on that point which must be left to the jury. We see no error here.

Eleventh exception, as to contributory negligence, was refused in the form presented, because, as stated by his Honor, "A charge should not merely state a general rule of law. It should be made in connection with a point in the case on which evidence has been offered. And the above rule, as applicable to horses, has already been charged upon and the defendant held liable for negligence, if proved." A judge is not bound to charge general and abstract propositions of law, however sound. They must

have some connection with the case and the facts relied on. So far as this principle had reference to the horses, it seems that the judge had charged upon it, and it was not necessary for him to go over that ground again. We think the reason which he gives vindicates his refusal.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.